3768.   SATTES & WIMER LUMBER COMPANY *v.* HALES

1. A claim is a proceeding of an equitable nature, and in a proper case the aid of equity may be invoked by the plaintiff in fi. fa. as well as by the claimant.
2. One who hauls logs to a sawmill with the knowledge and consent of the owner, who, in accepting the laborer's services, assumes to direct him as to the manner in which the logs should be cut, and what logs are to be hauled, may foreclose his statutory lien for hauling the logs upon the lumber cut therefrom, although the lienor was not employed in the first instance by the owner to haul the logs. The lien of a laborer upon the products of his labor can not be defeated by one who has knowledge of the performance of the labor and who accepts the benefit thereof, otherwise than by proof that the lien was waived or has been discharged by payment

DECIDED SEPTEMBER 30, 1912.

Appeal; from Gordon superior court—Judge Fite. September 9, 1911.

*J. G. B. Erwin Jr.,* for plaintiff in error.  *J. M. Lang,* contra.

RUSSELL, J. Hales sought to foreclose his statutory lien, for hauling logs, upon 29,000 feet of lumber, the property of the Sattes & Wimer Lumber Company, and the company interposed a claim, setting up that the lumber was its property, and not the property of one G. W. Spears, under whose employment the hauling was done, and who was the defendant in the foreclosure of the lien. When

the case came on for trial the judge, over the objection of the Sattes & Wimer Lumber Company, allowed an amendment to the lien—foreclosure proceedings, or, as it may more properly be called, an amendment to the plaintiff's joinder of issue in a claim case equitable in its nature. This amendment set up that the Sattes & Wimer Lumber Company, being the owner of a large quantity of timber in Gordon county, contracted with one Cart to haul it to mill and saw it and stack it, for $8 per thousand feet; that Cart in turn sublet the contract to Spears (the defendant in this lien proceeding) for $7 per thousand feet, and Spears contracted with Hales, the plaintiff, to cut and haul the logs to the mill yard for $3.40 per thousand feet. It was under this contract that Hales performed the work for which he claims the lien. The equitable amendment in aid of the levy further set up that soon after Hales began hauling the logs under the contract with Spears, Mr. Sattes, a member of the firm of Sattes & Wimer Lumber Company, came into the woods where he was at work, and on several different occasions gave him instructions as to the kind and size of timber to cut, and told him that all timber cut and hauled by him, which was not within the proper specifications, would not be accepted, and that the company would not pay him therefor. It is alleged that the claimant company, through its agents and members of the firm, knew that Hales was doing the work, and that they not only gave him no notice that they would not pay him, but, on the contrary, directed him how to do the work, and that he carried out their directions, with the result that the value of the company's property was enhanced to the amount claimed by him in his lien foreclosure; that the original contractors are residents of West Virginia and reside near the claimant, and Spears is not worth more than the homestead exemption allowed by law, and, by reason of the non-residence of Cart, the plaintiff is without remedy to collect this debt. The amendment further alleged that the lumber levied on was cut from the very timber which he (Hales) cut and hauled, and that, as the lumber company could have deducted the amount due him from the amount it contracted to pay, if either party must sustain a loss, it should be the lumber company rather than the plaintiff, because it had knowingly accepted his services.

The claimant demurred orally to the lien foreclosure, on the ground that it purported to be a foreclosure against the defendant

Spears and upon the property of the Sattes & Wimer Lumber Company, and that it was not alleged that any demand was ever made or other reason given authorizing proceedings against the Sattes & Wimer Lumber Company; also upon the ground that the plaintiff's lien-foreclosure proceeding failed to set out any cause of action; and moved the court to dismiss it upon these grounds. After the allowance of the amendment the claimant renewed its oral motion to dismiss the proceedings. Upon the trial there was no testimony except that of the plaintiff himself, who testified that he cut and hauled timber to Spears' sawmill, under his contract with Spears, at $3.40 per thousand feet, from November, 1910, until May, 1911; that Spears paid him monthly until April, 1911, when he failed to make payment; that he completed his contract with Spears and made demand on him for payment before bringing this suit; that the lumber levied on was sawed from the timber which he cut and hauled to the mill; that Mr. Sattes, of the claimant company, was there when he began cutting and hauling, and came to the woods and gave him the direction that no timber which was not fifteen inches in diameter was to be cut, and told him that the company would not pay for any that was unsound or smaller than the prescribed diameter. The lumber company paid Cart monthly the price agreed upon for timber that was sawed and stacked. The plaintiff's testimony established all of the allegations of his amendment.

1. We do not think the court erred in allowing the amendment. A claim case is a proceeding equitable in its nature, and nothing is more common than to permit the claimant to make amendments amplifying his original claim and invoking the aid of equitable principles to establish it. There is no reason why the plaintiff in a claim case should be entitled to less rights than the claimant, nor does any good reason appear why the plaintiff can not file an amendment in behalf of his joinder of issue as well as the claimant. That is all the amendment amounts to in this case. See *Wilkins* v. *Gibson,* 113 *Ga.* 56 (7), (38 S. E. 374, 84 Am. St. Rep. 204).

2. Then, did the court err in not dismissing the proceedings upon the ground that it appeared that the labor was done for one Spears and the lien was foreclosed against him as the nominal employer, and yet the foreclosure was sought to be enforced against the property of the Sattes & Wimer Lumber Company? We bear

in mind that the enforcement of the plaintiff's right involved the use of a harsh statutory remedy, which must therefore be strictly construed and applied; but as we view the case, under the allegations of the lienor's amendment, the services were. practically performed, not for the original contractor (Spears), but for the claimant. By the filing of the claim and under the amendment, the formal foreclosure by the justice of the peace was, in effect, set aside, and it became an open question as to whether Hales was entitled to foreclose any lien at all, and who (if anybody) owed him for the hauling, and what property, if any, was subject to the foreclosure of his lien, if he had a lien. The execution issued upon the foreclosure by the justice of the peace is only apparently final process; its issuance does not preclude the defendant or other parties at interest from showing that it should not have been issued. The claimant having arrested the levy of the lien fi. fa., and transferred it into mere mesne process, the court had before it an affidavit which was subject to amendment, and which, as we think, was properly amended so as to show that the real debtor, under equitable principles, was the Sattes & Wimer Lumber Company, and not Spears. The superior court had jurisdiction to apply equitable principles, and, as it appeared undisputed in the testimony that the Sattes & Wimer Lumber Company knew that Hales was performing the services under and in accordance with their contract, and as they received the benefits of Hales's labor, it would seem that, if either party should lose, that party should lose who, with knowledge of all the facts, could most easily have prevented loss from accruing to either party.

The judgment in this case is sustainable for a still better reason. The affidavit of foreclosure as amended, and the evidence, set up that the plaintiff's lien was that of a laborer, and that the property levied upon was the product of his labor. The claimant must be presumed to know the law with regard to the lienor's services in cutting and hauling the logs, and to have known that its property could not be discharged from this lien by paying the original contractor, who undertook the contract as a whole and then employed the plaintiff as a laborer to do a portion of the work. There is no evidence that the laborer had waived his lien, and there is undisputed evidence that he had not been paid for his labor. If the claimant had purchased the property in ignorance of the. ex-

istence of the lien the case would be different, but the lien of a laborer upon the product of his labor can not be defeated by one who has knowledge of the performance of the labor and who accepts the benefit thereof, otherwise than by proof that the lien was waived or has been discharged by payment. *Judgment affirmed.*